**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND
Baltimore Division**

| | |
|---|---|
| **CHRISTOPHER BRITTAN-POWELL,**<br><br>                      *Plaintiff*,<br>   v.<br><br>**COPPIN STATE UNIVERSITY,**<br><br>  **Serve:**<br>  **Hon. Brian E. Frosh**<br>  **Attorney General of Maryland**<br>  **200 St. Paul Place**<br>  **Baltimore, Maryland 21202,**<br><br>  *and*<br><br>**THE BOARD OF REGENTS OF THE<br>UNIVERSITY SYSTEM OF MARYLAND,**<br><br>  **Serve:**<br>  **Hon. Brian E. Frosh,**<br>  **Attorney General of Maryland**<br>  **200 St. Paul Place**<br>  **Baltimore, Maryland 21202,**<br><br>                      *Defendants*. | **Case No.:** _____ |

## CIVIL COMPLAINT FOR MONETARY AND EQUITABLE RELIEF

Plaintiff Christopher Brittan-Powell, by and through undersigned counsel, files this Complaint against Coppin State University and the Board of Regents of the University System of Maryland (collectively "Coppin State") for violations of the Rehabilitation Act of 1973.

### Introduction

1. Coppin State violated the Rehabilitation Act when it discriminated against him on the basis of his disability.

2. Coppin State violated the Rehabilitation Act when it failed to engage in an

1

interactive process and provide him with a reasonable accommodation for his disability.

3. Coppin State violated the Rehabilitation Act when it retaliated against him for his protected activity of seeking an accommodation under the Rehabilitation Act.

## Jurisdiction and Venue

4. This Court has jurisdiction over the subject matter of this jurisdiction pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States of America, namely the Rehabilitation Act.

5. Brittan-Powell has exhausted the administrative remedies available to him with the United States Equal Employment Opportunity Commission.

6. The United States Equal Employment Opportunity Commission issued Brittan-Powell a Notice of Right to Sue on July 9, 2019.

7. This Court has personal jurisdiction over Coppin State because it has substantial and deliberate contacts with the State of Maryland, it is an arm of the State of Maryland, and it conducts business in the State of Maryland.

8. Venue in this district and division is appropriate pursuant to 28 U.S.C. § 1391 because Coppin State has significant and deliberate contacts with this district and division.

9. Venue in this district and division is also appropriate pursuant to 28 U.S.C. § 1391 because it is the district and division where the substantial majority of the events giving rise to these claims occurred.

## Facts

10. Dr. Christopher Brittan-Powell, Ph.D. is an Associate Professor in Coppin State's Department of Psychology, Counseling, and Behavioral Health within Coppin State's College of Behavioral and Social Sciences. Coppin State hired Brittan-Powell in or about 2004.

11. In or about 2007, Brittan-Powell disclosed concerns of sexual harassment toward faculty members and students by former department chairman Clyde Mathura to former provost, Sadie Gregory. Upon disclosing his concerns and associated evidence directly to Mathura, Mathura physically assaulted Brittan-Powell and attempted to choke him, and Brittan-Powell fled and called the police. Upon Brittan-Powell's disclosure of these events to Gregory, Gregory directed Brittan-Powell to voice these concerns no further, and Coppin State negated the assault claims about which Dr. Brittan-Powell contacted the Baltimore City Police.

12. As a result of this encounter with Mathura, Brittan-Powell began to suffer from panic attacks and an anxiety disorder. Gregory later assigned Brittan-Powell to a different office, located farther away from Mathura's office. Mathura left his employment with Coppin State in or about 2008.

13. In or about April or May 2010, Brittan-Powell discovered a cheating scheme involving two students enrolled in the Department of Psychology, Counseling, and Behavioral Health. Brittan-Powell and a colleague met with one of the students, Janael Palmer, after consultation with colleagues. Palmer confessed to the cheating scheme and signed a written confession. A short time later Palmer filed criminal charges against Brittan-Powell, accusing Brittan-Powell of false imprisonment and of having forced her to sign a confession under duress.

14. Brittan-Powell stood trial for the charges and was acquitted. Coppin State scheduled the Honor Council hearing for the accused students at the same time as Brittan-Powell's trial. Because Brittan-Powell was unable to attend the Honor Council hearing for the accused students, Coppin State later dismissed the charges even though Palmer was subsequently convicted of perjury based on her allegations against Brittan-Powell. In this process, former Coppin State provost, Cynthia Jackson-Hammond, in concert with other top Coppin State

leadership, threatened Dr. Brittan-Powell if he sought means through the court system to clear his name of these allegations.

15. Brittan-Powell was elected to the leadership of the Faculty Senate of Coppin State in or about 2012. Brittan-Powell fought for reform at the University during his tenure on the Faculty Senate, and he attempted to raise awareness about perceived internal corruption.

16. From 2012 through about summer 2017, Brittan-Powell continued to suffer panic attacks. In or about fall 2017, Brittan-Powell took sabbatical leave from Coppin State, and during his sabbatical leave, Brittan-Powell's coping mechanisms developed over the five preceding years broke down. Brittan-Powell consulted with his physician, and then he requested accommodations from Coppin State on December 27, 2017.

17. Brittan-Powell requested the following accommodations on December 27, 2017: 1) that Coppin State would allow Brittan-Powell to teach classes remotely via video conference and recording and would allow Brittan-Powell to advise remotely the students assigned to him; 2) that Coppin State would allow Brittan-Powell to attend all meetings remotely; 3) that Coppin State would eliminate Brittan-Powell's minor job duties; 4) that Coppin State would provide Brittan-Powell with all supervisory instructions in writing; 5) that Coppin State would provide Brittan-Powell with assistive technology that would allow him to work remotely; and 6) that Coppin State would provide Brittan-Powell a "self-paced workload and flexible hours as needed."

18. Coppin State has allowed in recent years a number of professors to teach courses and advise students remotely. Under this arrangement students participate in the lecture via synchronous and/or remote videoconference tools made readily available by Coppin State. Professors interact with students for questions and answers, as well as receive students'

submitted work, through Blackboard, an online service, or other software provided to all students and employees for free and which are generally embedded in all Coppin State courses.

19. In recent years, at least one professor, Ralph Stevens, a professor of English, lived in Maine and taught a full course load, advised students remotely, and fulfilled all his regular duties remotely. Stevens interacted with students for questions and answers via Blackboard or videoconference and received work submissions by Blackboard.

20. In or about 2017 Brittan-Powell attended a faculty meeting at which the University Vice President and Chief Information Officer, Ahmed El-Haggan, praised the remote teaching arrangement enjoyed by Professor Stevens and noted the benefits it provided to both Stevens and his students.

21. Until about the time Brittan-Powell submitted his request for accommodations for his disability, several professors in his own academic department, in addition to Brittan-Powell, including James Stewart, the Chair of his department at the time, fulfilled most of their faculty duties remotely.

22. Brittan-Powell has been recognized by Coppin State Academic and Instructional Technology leadership for his excellence in using instructional technology to fulfill his professorial duties and for this advancing student enrollment numbers and matriculation.

23. Coppin State faculty members regularly participate in meetings remotely. The minor job duties from which Brittan-Powell sought relief included duties such as staffing information tables in common areas.  Brittan-Powell also sought to receive all supervisory instructions in writing so that there would be less room for disputes that arose from misunderstandings. The assistive technology which Brittan-Powell requested include equipment and platforms that are already established and functional Coppin State, such as Blackboard. The

"self-paced workload" that Brittan-Powell sought was a guarantee of the normal hours typical to most professors in academia, which are, by their very nature, irregular. Brittan-Powell intended to carry a full course load and a full slate of students to advise when he sought the accommodations.

24. Coppin State rejected out of hand Brittan-Powell's requested accommodations in or about February 2018.

25. On or about April 3, 2018, Brittan-Powell sent a letter to Coppin State through counsel. In the letter, the Brittan-Powell's counsel reminded Coppin State of its legal duty to accommodate disabilities, as well as its legal duty to participate in an interactive process with Brittan-Powell. Brittan-Powell's letter explained the sought accommodations in more details, and it referenced Professor Stevens as a comparator whom Coppin State had allowed to teach and advise remotely for a period of several years while Stevens lived in Maine.

26. In or about late April 2018, Coppin State charged Brittan-Powell as having been absent without leave from work on April 11, 2018, April 12, 2018, April 13, 2018, April 17, 2018, April 18, 2018, April 19, 2018, April 20, 2018, April 23, 2018, and April 24, 2018. Brittan-Powell and his attorney later met with Coppin State, its attorney, and a university representative on April 26, 2018, to further discuss the sought accommodations.

27. On or about May 18, 2018, Brittan-Powell's attorney sent another email to Coppin State in which she challenged the AWOL charge and reiterated the request for accommodations, and thereafter Coppin State afforded Brittan-Powell intermittent FMLA leave on May 23, 2018. In doing so, it allowed Brittan-Powell to retroactively categorize the forgoing AWOL days as leave.

28. On or about August 24, 2018, Brittan-Powell, through counsel, provided detailed

responses to questions received from Coppin State. These questions sought information about Brittan-Powell's condition, the accommodations sought, and his future employability. Brittan-Powell reiterated in his responses the accommodations he first sought in December 2017, and he noted that he had already provided medical information to support the need for accommodations. Brittan-Powell also carefully detailed how his work could be performed remotely.

29. On or about August 27, 2018, Coppin State assigned Brittan-Powell classes for Fall 2018. Originally, it assigned him three classes to be taught remotely online and one in-person. But then, on or about October 22, 2018, the Chair of the Psychology Department Brian Schmitt inexplicably instituted a new policy that no more than 50 percent of any professor's classes could be taught online. Schmitt claimed that the change came out of a concern for "fairness"; however, Brittan-Powell was the only person upon whom this change in policy had an effect.

30. Schmitt then assigned Brittan-Powell to teach two classes online and two in-person. On or about October 31, 2018, Brittan-Powell sent a follow-up letter to Coppin State, through counsel, in which he alleged the change in policy and new classes were retaliation for his protected activity of having sought an accommodation.

31. On or about November 13, 2018, Brittan-Powell filed an EEOC charge alleging disability discrimination, as well as retaliation for his protected activity of having sought an accommodation.

32. In or about November 2018, Coppin State requested that Brittan-Powell undergo an independent medical exam. Brittan-Powell agreed to undergo the examination with an independent physician named Dr. David Williamson, who was hired by Coppin State. Williamson concluded that Brittan-Powell suffered from panic attacks and that Brittan-Powell's

condition could be linked to the workplace and its stress, and he opined that Brittan-Powell needed accommodations for his condition. Coppin State rejected its own IME physician's findings.

33. In Spring 2019, Coppin State continued to allow Brittan-Powell to teach two classes remotely. But it did not follow up on his other accommodation requests, and it refused to make any commitment to further provision of full-time remote teaching and advising. This resulted in Brittan-Powell having to use his accrued leave earned as additional compensation to supplement the reduction in his earnings.

34. The Equal Employment Opportunity Commission issued Brittan-Powell a Notice of Right to Sue on July 9, 2019.

35. Brittan-Powell, through counsel, contacted Coppin State in or about August 2019 regarding the status of his accommodation requests. Subsequently, Coppin State sent Brittan-Powell a letter in September 2019 in which it requested an update as to his condition and a meeting with Brittan-Powell. Coppin State speciously claimed in the letter that the temporary accommodation of two classes taught remotely had imposed a great hardship upon it.

36. As a result of Coppin State's illegal discrimination and retaliation against Brittan-Powell, he has suffered monetary damages, emotional distress damages, and harm to his professional reputation.

## COUNT I
**Rehabilitation Act – Discrimination**
**29 U.S.C. § 794, *et seq*.**
**As to All Defendants**

37. Brittan-Powell incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

38. Brittan-Powell is an employee within the meaning of the Rehabilitation Act.

39. Coppin State is an employer within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(b)(2(A), because it is a public university which receives financial assistance from the United States federal government.

40. Brittan-Powell has a disability within the meaning of the Rehabilitation Act because his diagnosis of panic attacks has substantially impaired his ability to work, concentrate, think, communicate, and perform other daily tasks.

41. Coppin State has knowledge of this disability, as Brittan-Powell has repeatedly informed Coppin State of the limitations placed upon him by his disability.

42. Brittan-Powell continues to meet the legitimate expectations placed upon him by Coppin State. Brittan-Powell can teach courses and advise students, and he has repeatedly received positive evaluations from students for his performance as a professor.

43. Coppin State took an adverse employment action against Brittan-Powell when it denied Brittan-Powell an accommodation for his disability.

44. Coppin State took an adverse employment action against Brittan-Powell when it refused to engage with Brittan-Powell and his counsel regarding a proper accommodation for his disability.

45. Coppin State took an adverse employment action against Brittan-Powell when it charged him as being absent without leave for nine days in April 2018.

46. Coppin State took an adverse action against Brittan-Powell when it changed its policies regarding teaching classes online in October 2018.

47. Coppin State simultaneously allowed non-disabled professors to teach classes remotely and advise students remotely.

48. Coppin State's stated legitimate reasons for these actions are mere pretext for its

retaliatory actions.

49. As a result of Coppin State's discrimination against Brittan-Powell, he has suffered monetary damages, emotional distress damages, and harm to his professional reputation.

## COUNT II
### Rehabilitation Act – Failure to Accommodate
### 29 U.S.C. § 794, *et seq*.
### As to All Defendants

50. Brittan-Powell incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

51. Brittan-Powell is an employee within the meaning of the Rehabilitation Act.

52. Coppin State is an employer within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(b)(2(A), because it is a public university which receives financial assistance from the United States federal government.

53. Brittan-Powell has a disability within the meaning of the Rehabilitation Act because his diagnosis of panic attacks has substantially impaired his ability to work, concentrate, think, communicate, and perform other daily tasks.

54. Coppin State has knowledge of this disability, as Brittan-Powell has informed Coppin State repeatedly of the limitations placed upon him by his disability.

55. Brittan-Powell can perform the essential functions of the job with accommodations. Brittan-Powell is able to teach courses and advise students, and he has repeatedly received positive evaluations from students for his performance as a professor.

56. Brittan-Powell sought reasonable accommodations from Coppin State, beginning in December 2017, that included the following: 1) that Coppin State would allow Brittan-Powell to teach his classes remotely via video conference and recording and allow Brittan-Powell to advise the students assigned to him remotely, 2) that Coppin State would allow Brittan-Powell to

attend all meetings remotely, 3) that Coppin State would eliminate Brittan-Powell's minor job duties, 4) that Coppin State would provide Brittan-Powell with all supervisory instructions in writing, 5) that Coppin State would provide Brittan-Powell with assistive technology that would allow him to work remotely, and 6) that Coppin State would provide Brittan-Powell a "self-paced workload and flexible hours as needed."

57. Brittan-Powell has continued seek these accommodations through the present.

58. The accommodations that Brittan-Powell has sought would not impose an undue hardship on Coppin State.

59. Coppin State also failed to participate in an interactive process in good faith in order to identify a suitable accommodation.

60. Coppin State failed to provide reasonable accommodations.

61. As a result of Coppin State's failure to accommodate Brittan-Powell, he has suffered monetary damages, emotional distress damages, and harm to his professional reputation.

### COUNT III
**Rehabilitation Act – Retaliation**
**29 U.S.C. § 794,** *et seq.*
**As to All Defendants**

62. Brittan-Powell incorporates and realleges the allegations in the foregoing paragraphs as though alleged fully herein.

63. Brittan-Powell is an employee within the meaning of the Rehabilitation Act.

64. Coppin State is an employer within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(b)(2(A), because it is a public university which receives financial assistance from the United States federal government.

65. Brittan-Powell engaged in protected activity under the Rehabilitation Act when he informed Coppin State that he suffered from panic attacks, sought reasonable accommodations,

and filed an EEOC Charge.

66. Coppin State took an adverse employment action against Brittan-Powell when it denied Brittan-Powell an accommodation for his disability.

67. Coppin State took an adverse employment action against Brittan-Powell when it refused to engage in the interactive process with Brittan-Powell and his counsel regarding a reasonable accommodation for his disability.

68. Coppin State took an adverse employment action against Brittan-Powell when it charged him as being absent without leave for nine days in April 2018.

69. Coppin State took an adverse action against Brittan-Powell when it changed its policies regarding teaching classes online in October 2018 so as to preclude his receiving a reasonable accommodation for his disability.

70. Coppin State retaliated against Brittan-Powell for his engaging in protected activity when it denied his accommodations, charged a series of absences from work as "absent without leave," subjected Brittan-Powell to an IME, repeatedly asked Brittan-Powell for the same information multiple times, and changed its policy to prevent remote teaching and to preclude his receiving a reasonable accommodation for his disability.

71. Coppin State took these actions in temporal proximity to Brittan-Powell's protected activities under the Rehabilitation Act.

72. Coppin State also took these actions as part of a pattern of retaliation that began in 2018 and has continued through the present.

73. Coppin State's stated legitimate reasons for these actions are mere pretext for its retaliatory actions.

74. As a result of Coppin State's retaliation against Brittan-Powell, he has suffered

monetary damages, emotional distress damages, and harm to his professional reputation.

## Prayer for Relief

a. A reasonable accommodation that allows for Brittan-Powell to continue to teach and advise students remotely;

b. Front pay;

c. Back pay;

d. Compensatory damages;

e. Reasonable attorneys' fees and costs; and

f. And any other relief the Court may deem just or equitable.

## Jury Demand

Plaintiff Christopher Brittan-Powell demands a jury trial for all claims on which a jury trial is appropriate.

Christopher Brittan-Powell
*By Counsel*

/s/ Nicholas W. Woodfield
Nicholas W. Woodfield
R. Scott Oswald
The Employment Law Group, P.C.
888 17th Street, 9th Floor
Washington, D.C. 20006
Phone: (202) 261-2812
Facsimile:(202) 261-2835
nwoodfield@employmentlawgroup.com
soswald@employmentlawgroup.com
*Counsel for Plaintiff*