IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER BRITTAN-POWELL, | * | |
| Plaintiff, | * | |
| vs. | * | Civil Action No. ADC-19-2902 |
| COPPIN STATE UNIVERSITY, *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

Defendants Coppin State University ("Coppin State") and the Board of Regents of the University System of Maryland (the "Board") move this Court to dismiss Plaintiff Christopher Brittan-Powell's Complaint for violations of the Retaliation Act of 1973 (the "Motion to Dismiss") (ECF No. 16). After considering the Motion and the responses thereto (ECF Nos. 17, 18), the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). For the reasons stated herein, the Court GRANTS Defendants' Motion.

### FACTUAL BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff has been an Associate Professor in Coppin State's Department of Psychology, Counseling, and Behavioral Health since 2004. ECF No. 1 at 2, ¶ 10. In 2007, Plaintiff began to suffer from panic attacks and anxiety disorder after a colleague physically assaulted him at work. *Id.* at 3, ¶ 11–12. In April or May 2010, Plaintiff discovered a cheating scheme between two students in his department and met with one of the students involved, who signed a written confession. *Id.* at 3, ¶ 13. Shortly thereafter, the student filed criminal charges against Plaintiff for false imprisonment

1

and forcing her to sign a confession under duress. *Id.* Plaintiff was later acquitted of the charges at trial, and the student was convicted of perjury. *Id.* at 3, ¶ 14. Coppin State, however, scheduled the accused students' Honor Council hearing during Plaintiff's trial, and Plaintiff was unable to attend as a result, so the cheating charges against the students were dropped. *Id.*

From 2012 through summer 2017, Plaintiff continued to suffer panic attacks, and he took sabbatical leave from Coppin State during fall 2017. *Id.* at 4, ¶ 16. While on leave, the coping mechanisms he'd been developing since 2012 broke down, and he requested accommodations from Coppin State after consulting his physician. *Id.* On December 27, 2017, Plaintiff requested: (1) that Coppin State allow him to teach and advise students remotely; (2) that Coppin State allow him to attend all meetings remotely; (3) that Coppin State "eliminate [his] minor job duties"; (4) that Coppin State provide him all supervisory instructions in writing; (5) that Coppin State provide him with technology to allow him to work remotely; and (6) that Coppin State allow him to work with a "self-paced workload and flexible hours as needed." *Id.* at 4, ¶ 17.

Plaintiff alleges that Coppin State has allowed several professors to teach and advise students remotely in recent years. *Id.* at 4, ¶ 18. Coppin State has made lecture and videoconference tools readily available for this purpose. *Id.* Plaintiff alleges at least one professor in recent years lived in Maine while teaching a full course load remotely. *Id.* at 5, ¶ 19. Several professors in Plaintiff's own department, including the chair of the department at the time, fulfilled much of their duties remotely. *Id.* at 5, ¶ 21. In fact, Plaintiff alleges that he attended a meeting in 2017 during which the University Vice President praised the remote teaching arrangements and the benefits to both professors and students. *Id.* at 5, ¶ 20. Coppin State faculty members regularly participate in meetings remotely. *Id.* at 5, ¶ 23. Plaintiff has been recognized by Coppin State Academic and Instructional Technology leadership for his proficiency in using technology to

fulfill his instructional duties, and Plaintiff intended to carry a full course load remotely with his requested accommodations. *Id.* at 5–6, ¶¶ 22–23.

In February 2018, Coppin State rejected Plaintiff's requested accommodations. *Id.* at 6, ¶ 24. On April 3, 2018, Plaintiff sent a letter to Coppin State through counsel to remind it of its legal duty to accommodate disabilities and participate in an interactive process to determine the accommodations. *Id.* at 6, ¶ 25. On April 26, 2018, Plaintiff and his attorney met with Coppin State, its attorney, and a university representative to discuss Plaintiff's requested accommodations. *Id.* at 6, ¶ 26. In late April 2018, Coppin State charged Plaintiff with having been absent without leave ("AWOL") for nine days in April. *Id.* On May 18, 2018, Plaintiff, through counsel, sent Coppin State another email in which he challenged the AWOL charge and reiterated his request for accommodations. *Id.* at 6, ¶ 27. On May 23, 2018, Coppin State afforded Plaintiff intermittent FMLA leave and allowed Plaintiff to retroactively categorize his prior AWOL days as FMLA leave. *Id.*

On August 24, 2018, Plaintiff, through counsel, sent Coppin State requested information about Plaintiff's condition, the accommodations he sought, and his future employability. *Id.* at 6–7, ¶ 28. On August 27, 2018, Coppin State assigned Plaintiff his course load for the Fall 2018 semester, assigning him to teach three classes remotely and one class in person. *Id.* at 7, ¶ 29. On October 22, 2018, however, the Chair of Plaintiff's department unexpectedly instituted a new policy that professors could not teach more than fifty percent of their classes online. *Id.* Plaintiff alleges he was the only person this policy changed affected. *Id.* The Chair accordingly assigned Plaintiff to teach two classes online and two classes in person. *Id.* at 7, ¶ 30. On October 31, 2018, Plaintiff, through counsel, sent Coppin State a letter alleging the policy change and his new schedule were retaliation for him seeking accommodations. *Id.*

3

On November 13, 2018, Plaintiff filed an EEOC charge against Coppin State alleging disability discrimination and retaliation. *Id.* at 7, ¶ 31. In November 2018, Coppin State requested Plaintiff undergo a medical exam with an independent physician hired by Coppin State. *Id.* at 7–8, ¶ 32. After the examination, the physician concluded Plaintiff suffered from panic attacks linked to the workplace and its stress and that Plaintiff should receive accommodations for his condition. *Id.* Coppin State rejected their physician's findings. *Id.*

For the Spring 2019 semester, Coppin State continued to allow Plaintiff to teach two classes remotely, but it did not follow up on any of Plaintiff's other accommodation requests. *Id.* at 8, ¶ 33. It is unclear whether Plaintiff only taught the two remote classes and did not teach additional classes during that semester. *Id.* Plaintiff alleges he used his accrued leave time to supplement a reduction in his earnings. *Id.*

On July 9, 2019, the EEOC issued Plaintiff a Right to Sue notice. *Id.* at 8, ¶ 34. In August 2019, Plaintiff, through counsel, contacted Coppin State about the status of his accommodation requests. *Id.* at 8, ¶ 35. In September 2019, Coppin State sent Plaintiff a letter requesting an update on his condition and a meeting with him. *Id.* Also in the letter, Coppin State claimed Plaintiff's teaching two classes remotely "had imposed a great hardship on it." *Id.*

## PROCEDURAL BACKGROUND

On October 2, 2019, Plaintiff filed this lawsuit against Defendants, seeking a reasonable accommodation from his employer to continue work, front and back pay, compensatory damages, and fees. ECF No. 1.[1] On January 24, 2020, Defendants filed the Motion to Dismiss for failure to state a claim. ECF No. 16. On February 6, 2020, Plaintiff opposed the Motion to Dismiss, ECF

---

[1] On October 3, 2019, in accordance with Standing Order 2019-07 of the United States District Court for the District of Maryland and upon consent of all parties, this case was directly assigned to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 3.

4

No. 17, and on February 18, 2020, Defendants filed a reply, ECF No. 18. Accordingly, the Motion to Dismiss is fully briefed.

## DISCUSSION

### A. Standard of Review for Motions to Dismiss for Failure to State a Claim

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As stated in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

### B. Defendants' Motion to Dismiss

In their Motion to Dismiss, Defendants first argue that the Board is an improper Defendant that should be dismissed and then seek to dismiss Counts I and III of Plaintiff's Complaint.

5

1. *The Board Will Be Dismissed Without Prejudice.*

Defendants first argue that the Board is an improper defendant in this matter, as it is not Plaintiff's employer. ECF No. 16-1 at 4–5. Defendants also point out that Plaintiff made no factual allegations in his Complaint involving the Board. *Id.* In response, Plaintiff agrees to stipulate to the Board's dismissal, provided it is dismissed without prejudice. ECF No. 17 at 8. Accordingly, the Board will be DISMISSED without prejudice.

2. *Plaintiff's Discrimination and Retaliation Claims Cannot Be Sustained.*

Defendants then argue that Plaintiff's claims of discrimination (Count I) and retaliation (Count III) under the Rehabilitation Act of 1973 should be dismissed. ECF No. 16-1 at 5–9. They argue that Plaintiff does not properly allege an adverse employment action to support his claims and that Counts I and III are duplicative of Count II, which they do not seek to dismiss. Plaintiff argues that he has alleged sufficient facts to support *prima facie* cases of discrimination and retaliation and he is not precluded at this stage from pleading alternative remedies. ECF No. 17 at 8–14.

Generally, courts "construe the ADA and Rehabilitation Act to impose similar requirements." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). The statutes only differ regarding the causation element: under the Rehabilitation Act, "the plaintiff must establish he was excluded 'solely by reason of' his disability," while under the ADA, the plaintiff must only establish "that the disability was 'a motivating cause' of the exclusion." *Id.* at 461–62 (quoting *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468–69 (4th Cir. 1999)). The Rehabilitation Act provides "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

    a. Plaintiff's Discrimination and Retaliation Claims Are Only Partially Duplicative of his Failure to Accommodate Claim.

Plaintiff alleges Defendants discriminated against him by (1) denying him an accommodation for his disability, (2) refusing to engage with him regarding a proper accommodation, (3) charging him for being AWOL for nine days in April 2018, and (4) changing its policies regarding teaching classes online in October 2018. ECF No. 1 at 9, ¶¶ 43–46. Plaintiff then alleges Defendants retaliated against him by (1) denying him an accommodation for his disability, (2) refusing to engage in an interactive process with him regarding a reasonable accommodation, (3) charging him with being AWOL for nine days in April 2018, (4) changing its policy regarding teaching online classes to preclude his reasonable accommodation, (5) subjecting him to an independent medical examination, and (6) repeatedly asking him for the same information regarding his disability. *Id.* at 12, ¶¶ 66–70. Defendants argue that Plaintiff's allegations that Defendants discriminated and retaliated against him by denying him reasonable accommodations and failing to engage in an interactive process are duplicative of Plaintiff's failure to accommodate claim in Count II. ECF No. 16-1 at 7.

While plaintiffs bringing suit under the Rehabilitation Act may allege causes of action for discrimination, retaliation, and failure to accommodate, courts "do not recognize [] retaliation claims that are simply repackaged failure to accommodate claims." *Koty v. Zaruba*, No. 15 C 2600, 2017 WL 4150684, at *7 (N.D.Ill. Sept. 19, 2017). Essentially, a plaintiff cannot sustain a retaliation or discrimination claim if the adverse actions the plaintiff alleges the employer took all stem directly from the employer rejecting requested accommodations. *Pack v. Ill. Dep't of Healthcare & Family Servs.*, No. 13-cv-8930, 2014 WL 3704917, at *4 (E.D.Ill. July 25, 2014).

7

Where, however, the factual allegations underlying a discrimination or retaliation claim differ from the factual allegations underlying the failure to accommodate claim, the plaintiff's claims are not duplicative. *Torzewski v. COSCO Shipping Lines N. Am. Inc.*, 414 F.Supp.3d 1143, 1150 (E.D.Ill. Sept. 27, 2019).

Here, to the extent Plaintiff alleges Defendants discriminated and retaliated against him by denying him an accommodation for his disability, ECF No. 1 at 9, 12, ¶¶ 43, 66, and by refusing to engage in an interactive process to find a reasonable accommodation, *id.* at 9, 12, ¶¶ 44, 67, Plaintiff's claims are duplicative of his failure to accommodate claim and will be dismissed accordingly. Plaintiff's other allegations supporting his discrimination and retaliation claims, however, do not stem from Defendants' alleged failure to accommodate his disability, and they are not duplicative of his failure to accommodate claim.

      b. Plaintiff Fails to Alleges Facts to Support *Prima Facie* Cases of Discrimination or Retaliation.

The Court now turns to whether Plaintiff has alleged sufficient facts to support a *prima facie* case of discrimination (Count I) or retaliation (Count III). The Court will address each Count in turn.

      1. Plaintiff Cannot Support a *Prima Facie* Case of Discrimination.

Plaintiff alleges Defendants discriminated against him by (1) charging him for being AWOL for nine days in April 2018, and (2) changing its policies regarding teaching online classes in October 2018. ECF No. 1 at 9, ¶¶ 45–46. Defendants argue that neither allegation is an adverse employment action to sustain a claim of discrimination. ECF No. 16-1 at 8.

Under the Rehabilitation Act, to sustain a *prima facie* case of discrimination, a plaintiff "must demonstrate that he: (1) has a disability; (2) is otherwise qualified for the job in question; and (3) suffered an adverse employment action solely because of his disability." *Rock v. McHugh*,

819 F.Supp.2d 456, 470 (D.Md. 2011) (citing *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995)). An adverse employment action is "not limited to ultimate employment decisions, but rather encompasses any discriminatory act or harassment that alters the terms, conditions, or benefits of employment." *Id.* (citing *Von Gunten v. Md.*, 243 F.3d 858, 864 (4th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 67–68 (2006)). Ultimately, an adverse employ action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Van Story v. Washington Cty. Health Dep't*, ELH-17-3590, 2019 WL 3340656, at *20 (D.Md. July 25, 2019) (quoting *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (2011)). Defendants do not challenge that Plaintiff has a disability and is qualified for his position; they only argue Plaintiff was not subject to a sufficient adverse employment action.

First, regarding Plaintiff's AWOL charge, Defendants argue that Plaintiff failed to allege the charge altered the terms, conditions, or benefits of his employment. ECF No. 16-1 at 8. Generally, an AWOL charge is not an adverse employment action supporting a claim of discrimination or retaliation. *Hamilton v. Prince George's Cty., Md.*, No. DKC-17-2300, 2019 WL 4735429, at *5 (D.Md. Sept. 27, 2019) (quoting *Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F.Supp.2d 480, 492 (D.Md. 2013); *see also Fry v. Prince George's Cty., Md.*, No. AW-05-3105, 2008 WL 9360013, at *9 (D.Md. Mar. 14, 2008) (finding that when the plaintiff had been charged with being AWOL, but could not show "any negative consequences or injury as a result," the charge was not an adverse employment action); *Spriggs v. Pub. Serv. Comm'n of Md.*, 197 F.Supp.2d 388, 398 (D.Md. 2002) ("Because plaintiff has not demonstrated that the AWOL charge carried negative consequences for her, it does not constitute an adverse employment action.").

Here, Plaintiff was charged with being AWOL for nine days in April 2018. Plaintiff alleges he was absent for the nine days because Defendants had refused to grant his requested accommodation of teaching remotely. ECF No. 17 at 10–11. On May 23, 2018, Plaintiff's AWOL days were recategorized as permitted FMLA leave. ECF No. 1 at 6, ¶¶ 26–27. Plaintiff has failed to show that he was negatively impacted by the AWOL charge, particularly in light of the days being recategorized as permitted leave. Accordingly, the AWOL charge is not an adverse employment action supporting a claim of discrimination.

Second, regarding the online teaching policy changes in October 2018, Defendants argue that Plaintiff also has not alleged he experienced an adverse change in his employment status resulting from the policy change. ECF No. 16-1 at 8. During the Fall 2018 semester, Plaintiff's teaching schedule originally slated him to teach three classes remotely and one class in person. Following the policy change, Plaintiff was slated to teach two classes remotely and two classes in person. Plaintiff alleges he was also scheduled to teach only two classes remotely during the Spring 2019 semester and that Coppin State "did not follow up on his other accommodation requests, and it refused to make any commitment to further provision of full-time remote teaching and advising." *See* ECF No. 1 at 8, ¶ 33. Plaintiff states that he was forced to use leave to "supplement the reduction in his earnings," but he alleges no facts regarding why the supplementation was necessary. *Id.* The Complaint does not specify whether Plaintiff was only teaching the two remote classes or whether he was teaching both the two remote classes and the two in-person classes as he did the previous semester. The Court is, therefore, left without knowledge of the underlying facts that caused Plaintiff to have to supplement his earnings. Though a motion to dismiss is viewed in the light most favorable to the plaintiff, the Court cannot discern whether Defendants' policy change regarding remote teaching altered "the terms, conditions, or benefits" of Plaintiff's

employment. *See Rock*, 819 F.Supp.2d at 470. Accordingly, the remote work policy change is not an adverse employment action supporting a claim of discrimination. Therefore, the Court will GRANT Defendant's Motion to Dismiss Count I of Plaintiff's Complaint.

2. Plaintiff Cannot Support a *Prima Facie* Case of Retaliation.

Plaintiff alleges Defendants retaliated against him by (1) charging him with being AWOL for nine days in April 2018, (2) changing its policy regarding teaching online classes to preclude his reasonable accommodation, (3) subjecting him to an independent medical examination, and (4) repeatedly asking him for the same information regarding his disability. *Id.* at 12, ¶¶ 68–70. Defendants again argue that Plaintiff's allegations are not adverse actions sufficient to support a claim of retaliation. ECF No. 16-1 at 8–9.

Under the Rehabilitation Act, to sustain a *prima facie* case of retaliation, a plaintiff must show "(1) that he engaged in a protected activity, (2) that the [defendant] took an adverse action against him, and (3) that the adverse action was casually connected to his protected activity." *Brady v. Bd. of Educ. of Prince George's Cty.*, 222 F.Supp.3d 459, 474 (D.Md. 2016) (quoting *S.B. ex rel. A.L. v. Bd. of Educ. of Hartford Cty.*, 819 F.3d 69, 78 (4th Cir. 2016)). The "adverse action" standard for a retaliation claim differs from the "adverse employment action" standard for a discrimination claim. *See Van Story*, 2019 WL 3340656, at *18. "In other words, the adverse action 'need not be employment or workplace-related in order to sustain a retaliation claim.'" *Id.* (quoting *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018)). This standard is more lenient than the standard in a discrimination claim. *Id.* (citing *Burligton N.*, 548 U.S. at 64). To properly allege that an adverse action occurred, a plaintiff must demonstrate that "the challenged action 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N.*, 548 U.S. at 68). For reference, this Court has

previously held that none of the following constitute an adverse action to support a retaliation claim: "failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee AWOL; or issuing a personal improvement plan, an Attendance Warning, a verbal reprimand, a formal letter of reprimand, or a proposed termination." *Wonasue*, 984 F.Supp.2d at 492 (internal quotation marks omitted).

Even under this more lenient standard, Plaintiff has not alleged sufficient facts to support a claim for retaliation regarding his AWOL charge or the remote work policy change for the reasons stated above. *See supra* Part B.2.b.1. Regarding Plaintiff's allegations that Defendants subjected him to an independent medical examination and repeatedly asked him for the same information, the Court finds these actions would not dissuade a reasonable worker from making a charge of discrimination. Accordingly, Plaintiff does not allege an adverse action to support a claim of retaliation. Therefore, the Court will GRANT Defendants' Motion to Dismiss Count III of Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 16) is GRANTED. The Board will be DISMISSED as a Defendant without prejudice. Counts I and III of Plaintiff's Complaint will be DISMISSED. A separate Order will follow.

| | |
|---|---|
| __April 9, 2020_____ | _____/s/_____ |
| Date | A. David Copperthite |
| | United States Magistrate Judge |